UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMY S. WHITEHEAD,

    Plaintiff,

v.                                            Case No. 5:05-cv-50
                                              Hon. Gordon J. Quist
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI).[1]

Plaintiff was born on March 27, 1963 and graduated from high school (AR 57, 80).[2] Plaintiff stated that she became disabled on November 5, 1999 (AR 56).[3] She had previous employment as an adult foster care aide and daycare provider (AR 203). She identified her disabling conditions as obesity, back pain, diabetes, high blood pressure, swollen legs, asthma, depression and headaches (AR 191-92, 201-02). After administrative denial of plaintiff's claim, an Administrative

---

[1] The federal court's standard of review for supplemental security income cases "mirrors" the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991).

[2] Citations to the administrative record will be referenced as (AR "page #").

[3] Plaintiff filed an application for DIB and SSI on October 23, 2001 (AR 28). Her claims were denied, and an ALJ found her "not disabled" on August 11, 2003 (AR 28). After initially upholding the decision, the Appeals Council re-opened, vacated and remanded for a new hearing pursuant to an order entered December 23, 2003 (AR 28).

Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on August 27 2004 (AR 28-37). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. Following the five steps, the ALJ initially found that plaintiff was insured for benefits through December 31, 2003 and that she had not engaged in substantial gainful activity since November 5, 1999 (AR 36). Second, the ALJ found that she suffered from severe impairments of diabetes, asthma, high blood pressure, back pain, obesity and depression (AR 36). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 21). The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC):

> to lift and carry up to 10 pounds maximum, standing and walking up to two hours and sitting 6 hours in an eight-hour day. She should avoid even moderate exposure to fumes, odors, dust, gases, or poor ventilation. She can only occasionally use ramps, stairs, balance, stoop, crouch, kneel, crawl, squat, bend, twist, push, pull and reach with the upper extremities. She is limited to unskilled work.

(AR 36). The ALJ further concluded that plaintiff was unable to perform her past relevant work (AR 36).

At the fifth step, the ALJ determined that plaintiff was capable of performing a significant range of sedentary work (AR 37). Specifically, the ALJ found that an individual with plaintiff's limitations could perform the following jobs in the lower peninsular of Michigan: inspector (1,000 jobs); assembler (300 jobs); security monitor (2,100 jobs); order clerk (5,600 jobs); administrative support person (3,000 jobs); information clerk (1,800 jobs); and general office clerk (11,100 jobs) (AR 37). The ALJ also found plaintiff's and her mother's allegations regarding her limitations not totally credible (AR 36). Accordingly, the ALJ determined that plaintiff was not

under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 37).

## III. ANALYSIS

Plaintiff has raised five statements of error.

### A. Did the ALJ base his decision on the substantial evidence of the whole record in denying disability benefits?

Plaintiff has not developed any argument to support this alleged error.[4]  "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).  Accordingly, the court deems this argument waived.

### B. Did the ALJ err when finding the claimant lacked credibility?

Next, plaintiff contends that the ALJ gave no weight to plaintiff's testimony regarding her morbid obesity (weighing 560 pounds), degenerative arthritis, suicide attempts and depression. Plaintiff states that "the record is devoid of any evidence that would show this claimant lacks credibility given the severity of her conditions" even though "[t]he ALJ claims he gave **reasonable** weight to the claimant's testimony." Plaintiff's Brief at 20 (emphasis in original).  Plaintiff contends that the ALJ's gave "mere lip service" to her testimony.  Plaintiff's Brief at 20.

---

[4] Plaintiff's argument consists of three sentences:

Clearly the evidence is substantial that the claimant is disabled from all employment.  The testimony and medical records support that finding.  There is no evidence the claimant lacked credbility."

Plaintiff's Brief at 19.

5

It is the ALJ's function to resolve conflicts in the evidence and determine issues of credibility. *See Siterlet v. Secretary of Health and Human Servs.*, 823 F. 2d 918, 920 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). An ALJ's credibility determinations are accorded deference and not lightly discarded. *See Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993); *Hardaway v. Secretary of Health and Human Servs.*, 823 F.2d 922, 928 (6th Cir. 1987). An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). *See also Tyra v. Secretary of Health and Human Servs.*, 896 F.2d 1024, 1030 (6th Cir. 1990) (ALJ may dismiss claimant's allegations of disabling symptomatology as implausible if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict).

The ALJ stated that:

> After careful consideration of the entire record, while giving reasonable credit to the claimant's and her mother's testimony and findings of her treating physicians, it must be noted that the record consists almost exclusively of subjective pain complaints by the claimant which do not support a conclusion that she is unable to perform any substantial gainful activity.

(AR 34). The ALJ assessed plaintiff's credibility as follows:

> After carefully considering the statements of the claimant and her mother concerning her impairments and the impact on her ability to work, the Administrative Law Judge finds that they are not entirely credible. In reaching this conclusion, the undersigned first considered the threshold issue, which is whether the claimant's medically determinable impairments could reasonably be expected to cause the symptomatology the claimant has alleged and concludes they could, but not to the extent the claimant has alleged.

(AR 31).

Contrary to plaintiff's contention, the ALJ reviewed plaintiff's credibility in light of her complaints and the record. The ALJ observed that while plaintiff is morbidly obese, "she has been severely obese all her life, weighing over 300 pounds in high school" (AR 32). The ALJ observed that plaintiff "was able to complete high school, work full time at two or three different jobs, date and marry her husband, and date and live with another man after her husband's death" and that she had no new limitations related to her obesity that would justify a finding of disability (AR 32).

The medical records indicate that plaintiff suffered from mild degenerative disc disease of the lumbar spine (AR 32). The ALJ noted that while plaintiff has complained of back pain since 1999, she has been treated with Vicodin, and has not been referred for physical therapy, epidural blocks, surgical consultation, or further diagnostic testing (AR 33). The ALJ observed that plaintiff's occasional headaches were treated with Imitrex (AR 33). Although plaintiff complained that back pain prevented her from working or performing most household activities, the ALJ noted that her range of motion was only slightly decreased and essentially normal during consultative examinations in February 2002 and January 2004 (AR 32, 110-14, 329-39). In this regard, plaintiff reported to one consultative examiner that she stopped work as a direct care giver in a home for disabled people in 1999 "because of her back and also because the home was closing" (AR 111).

The ALJ noted that plaintiff was depressed after her husband died in a farming accident in November 2002 (AR 30). Plaintiff saw a psychologist, John A. Jerome, Ph. D., on November 6, 2003 (AR 340-42). Based on this examination, Dr. Jerome prepared a Psychiatric Review Technique Form (PRTF) and concluded that on that date she met the requirements of Listing 12.04 (affective disorders) (AR 351-65). At that time, plaintiff reported two suicide attempts, i.e.,

that she slit her left wrist in January 2003 and that she overdosed on Tylenol and Advil in July 2003 (AR 341). Plaintiff required no medical attention for either of these incidents (AR 341). Plaintiff told Dr. Jerome that she had been depressed a lot of her life (AR 342). The ALJ determined that the medical record did not support Dr. Jerome's conclusions, that plaintiff was markedly limited in activities of daily living and in maintaining concentration, persistence or pace (AR 33). Finally, the court notes that Dr. Jerome did not identify plaintiff as suffering from "thoughts of suicide," even though the doctor was aware of plaintiff's reported attempted suicides (AR 341, 354).

In April 2004, plaintiff was interviewed at a Community Mental Health service, requesting an evaluation for chemical dependency (AR 343). At that time, plaintiff stated that she "cut her wrist" in December 2003 but did not need medical attention for this incident (AR 343). The Community Mental Health diagnosed plaintiff with "nondependent abuse of drugs - cocaine abuse" (AR 348). Plaintiff testified that she began seeing a mental health counselor approximately one month prior to her administrative hearing (i.e., approximately April 2004) (AR 449-50). However, the administrative record does not reflect any counseling sessions.

In addition, plaintiff has given an inconsistent history of her drug use. When questioned by the ALJ, plaintiff denied using illegal drugs or alcohol (AR 450). On questioning by her attorney, plaintiff admitted that she used to drink when she bowled in 1987, and that she tried cocaine or marijuana "once or twice" in the last year (AR 461). On January 21, 2004, plaintiff reported to a consultative examiner that she did not use alcohol or recreational drugs (AR 330). Then, in April 2004, plaintiff reported to the Community Mental Health that she used cocaine once in the past 30 days (AR 343-45). Plaintiff also reported that she used alcohol for 6 years, cocaine for 1 year and cannabis for 2 years (AR 345). Plaintiff's request to be evaluated for chemical

8

dependency on April 22, 2004, only a few weeks before her hearing, is inconsistent with her testimony, in which she denied using illegal drugs and then admitted using drugs "once or twice."

In addition, the ALJ observed that "[d]espite claimant attorney's allegations that the claimant is limited in her ability to read and write and that she has a history of special education, she reported in November 2002 that she did not take special education classes" (AR 33). The court notes that plaintiff has made inconsistent statements with respect to her educational history. In her disability report of September 2003, plaintiff stated that she attended special education classes in reading and math from 1975 to 1981 (AR 208). However, plaintiff denied attending special education classes in her previously filed disability reports from November 2001 and November 2002 (AR 80, 198). The ALJ concluded that plaintiff could read and write adequately, based upon her responses to questions on multiple forms related to her application for disability (AR 34).

Plaintiff has made inconsistent statements regarding her medical history, use of alcohol and illegal drugs, and educational background. Contradictions exist between the medical records, claimant's testimony, and other evidence. *See Walters*, 127 F.3d at 531. Accordingly, the ALJ could discount plaintiff's credibility.

        **C.**    **Did the ALJ fail to ask a hypothetical based upon the complete record to the VE?**

Next, plaintiff contends that the ALJ failed to pose an appropriate hypothetical question to the vocational expert (VE). Specifically, plaintiff contends that the hypothetical question posed to the VE should have referenced plaintiff's chronic pain, depression, degenerative disc disease, morbid obesity, thoughts of suicide and suicide attempts. Plaintiff's Brief at 19.

9

An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question which accurately portrays the claimant's physical and mental impairments. *Id.* However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform a range of sedentary work (AR 36). The hypothetical question posed to the VE included those restrictions which the ALJ found as credible (AR 483-84). While plaintiff contends that her medical conditions prevent her from working, she does not allege any specific limitations resulting from those conditions. Apparently, plaintiff contends that the ALJ should have presented the VE with a list of her medical conditions in addition to, or in place of, her RFC. The court disagrees. Plaintiff's diagnoses, i.e., chronic pain, depression (which would incorporate plaintiff's suicidal thoughts), degenerative disc disease, morbid obesity, do not establish a disability. "[T]he mere diagnosis of an impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual." *McKenzie v. Commissioner of Social Security*, No. 99-3400, 2000 WL 687680 at *5 (6th Cir. May 19, 2000), *citing Foster v. Bowen*, 853 F.2d 488, 489 (6th Cir.

1988). Here, the ALJ's hypothetical question posed to the VE appropriately set forth the limitations that arose from plaintiff's medical conditions, and was therefore proper.

### D. Did the ALJ follow the orders of the Appeals Council upon remand?

Next, plaintiff contends that the ALJ did not follow the Appeals Council's order remanding the case to the ALJ (AR 158-61). The ALJ's alleged non-compliance with an Appeals Council's order of remand is not an appropriate issue for this proceeding. In the present case, the ALJ denied plaintiff's claim in a decision dated August 11, 2003 (AR 132-40). The Appeals Council remanded the case to the ALJ on December 23, 2003 with various instructions (AR 158-61). On remand, the ALJ held a hearing and issued an unfavorable decision on August 27, 2004 (AR 28-37). Plaintiff requested review of the second unfavorable decision, which the Appeals Council denied on September 24, 2004 (AR 14-16). In denying plaintiff's request for review, the Appeals Council had the opportunity to remand the matter a second time, but chose to let the ALJ's decision stand.

Now, plaintiff seeks to have this court remand the matter to the ALJ, because the ALJ purportedly failed to follow the Appeals Council's order of remand. In seeking the present remand, plaintiff is asking this court to reverse the Appeals Council's September 24, 2004 order denying review of the ALJ's decision. There is no basis for the court to review the Appeals Council's order denying a request for review. "Only final decisions of the [Commissioner] are subject to judicial review under [42 U.S.C.] § 405(g)." *Willis v. Secretary of Health and Human Servs.*, No. 93-6337, 1995 WL 31591 at * 2 (6th Cir. 1995), *citing Califano v. Saunders*, 430 U.S. 99, 108 (1977). When the Appeals Council denies review, the decision of the ALJ becomes the final decision of the Commissioner. *Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Accordingly, plaintiff's request for a remand should be denied.

    **E. Did the ALJ commit reversible error by discounting the testimony of John A. Jerome, Ph. D.?**

  Finally, plaintiff's statement of errors allege that the ALJ erred in discounting Dr. Jerome's testimony. Plaintiff's Brief at v. However, plaintiff has failed to develop any argument with respect to this issue. Accordingly, the court deems this argument waived. *See McPherson*, 125 F.3d at 995-96.

**IV. Recommendation**

  I respectfully recommend that the Commissioner's decision be affirmed.


Dated:  March 31, 2006       /s/ Hugh W. Brenneman, Jr.
              Hugh W. Brenneman, Jr.
              United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).